S97A1602. JONES v. THE STATE.
(494 SE2d 645)

SEARS, Justice.

Appellant Kim Jones appeals her conviction for the murder of Gina Murray, claiming that the trial court erred in admitting over objection her tape recorded confession to the killing. Because the evidence supports the trial court's conclusion that Jones' confession was voluntarily and knowingly made, we affirm.

The relevant evidence, construed most favorably to the verdict, shows that Jones lived with Murray in the latter's home, and that the two argued frequently and sometimes violently. After a long argument one afternoon, Murray indicated that she wanted Jones to move out of her home. Murray was not seen again after that argument. The next day, Jones telephoned police to say that she had discovered

her roommate dead inside the home. Murray's body was found lying on her bed. She had been shot in the head at close range.[1]

Jones voluntarily went to police headquarters, where she gave a 14-page statement to a police detective, in which she denied knowledge about the circumstances attending Murray's death. After making that statement in the early evening hours, Jones was held in the police station interview room overnight, where she was periodically questioned by different investigators. During that period, she requested and was given beverages. The following morning, the detective to whom Jones gave her initial statement returned to the police station, and spoke with Jones. After reading Jones her *Miranda* rights, the detective determined that Jones needed rest and released her into the custody of the DeKalb County jail. Approximately 40 minutes after Jones was taken to the jail, she telephoned the detective and said she wished to make a second statement. She was returned to the interview room, where she again was read her *Miranda* rights, stated she understood those rights, and signed a waiver of rights form. Jones stated that she did not wish to have an attorney present. She then made a statement in which she confessed to the killing. The attending detective testified that, during the interrogation, Jones appeared coherent and responsive, and understood his questions. Jones also assisted detectives in their effort to recover the murder weapon, although it was never found.

1. The evidence introduced at trial, construed most favorably to the verdict, was sufficient to enable a rational trier of fact to find Jones guilty of malice murder.[2]

2. Relying upon *Coker v. State*,[3] Jones claims that the trial court erred in denying her pre-trial *Jackson-Denno* motion to suppress her confession as having been involuntarily made. In *Coker*, after being arrested for suspicion of murder, the defendant was held in jail for 12 hours before being taken to police headquarters, where he was continuously interrogated for approximately 15 hours before being taken back to jail. Shortly thereafter, he was awakened in his jail cell and involuntarily taken back to police headquarters, where he found his interrogators waiting for him a second time. After 15 minutes of

---

[1] The murder was committed on the night of July 7-8, 1996, and Jones was indicted for malice and felony murder in September of that same year. The trial was held on February 19-21, 1997, and Jones was found guilty on both counts. The felony murder conviction was vacated by operation of law, and by order entered on February 21, 1997, Jones was sentenced to life imprisonment for malice murder. Her new trial motion was filed on March 20, 1997, and denied on June 6, 1997. The court reporter certified the transcript of the trial on May 14, 1997. Jones' notice of appeal was filed in the trial court on June 10, 1997. The appeal was docketed with this Court on June 27, 1997, and it was submitted for decision without oral argument on August 18, 1997.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] 199 Ga. 20 (33 SE2d 171) (1945).

questioning, he broke down, cried, and confessed. Finding Coker's confession to have been involuntary and brought about by undue duress, this Court reversed.[4]

The facts of this case, however, differ markedly from those in *Coker*. First, before confessing, Jones was read her rights under *Miranda*, stated she understood those rights, and signed a waiver of rights form. Thereafter, Jones did not invoke her right to have a lawyer present during her interrogation. Second, the interview in which Jones confessed was not forced upon her, but rather was initiated by Jones herself, who stated that she wished to speak with investigators a second time. Finally, although the detective testified that Jones was quite tired, no evidence was introduced to show that Jones' capacity was diminished at the time she confessed so as to render her confession involuntary or unknowingly made.

Based upon these facts, the trial court found that the State had satisfied its burden of demonstrating the voluntariness of Jones' confession by a preponderance of the evidence, and it was admitted.[5] We are bound by the trial court's findings in a *Jackson-Denno* hearing unless they are clearly erroneous.[6] Having reviewed the hearing transcript, we determine that the trial court's factual findings are not clearly erroneous, and that the evidence supports the conclusion that Jones' confession was knowingly and voluntarily made, and thus was admissible.[7]

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 26, 1998.

*Conrad & Abernathy, Eric A. Ballinger,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Priscilla N. Carroll, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.

---

[4] 199 Ga. at 25-26.

[5] See *Head v. State*, 262 Ga. 795, 797 (426 SE2d 547) (1993).

[6] Id.

[7] Due to the absence of evidence that Jones' capacity was diminished due to sleep deprivation, we have not been convinced that her confession was involuntary and thus was improperly admitted. Under different circumstances, however, it is conceivable that the interrogation techniques used in this case might taint an otherwise valid confession, such as occurred in *Coker*, supra. For that reason, we caution law enforcement officers to exercise extreme caution when interrogating criminal suspects for long periods and throughout the night to ensure that the suspect's capacity is not adversely affected.